## PALMER v. FLEMING.

EQUITY JURISDICTION; CONSENT; PROOF.

1. Consent of the parties cannot give equity jurisdiction of a case properly triable at law.
2. Where a court of equity has acquired jurisdiction of a case on equitable grounds, it will administer complete relief, although the relief is such as would properly come from a court of law; but a court of equity does not acquire jurisdiction of a case by the mere allegation of an equitable ground of relief in a bill of complaint. Allegations and proof are both required for that purpose, and when the proof fails the jurisdiction fails also.

No. 8. Submitted November 9, 1893.—Decided December 4, 1894.

HEARING on an appeal by the complainant from a decree of the Supreme Court of the District of Columbia, holding an equity term, overruling exceptions to a report of the Auditor and dismissing a bill for an accounting. *Modified and affirmed.*

THE COURT in its opinion stated the case as follows:

This is a suit in equity for an accounting. In or about the month of May, 1884, the appellant, then a senator of the United States from the State of Michigan, proposing to build for himself a residence in the city of Washington, employed the defendant John R. Thomas, an architect resident in the city of New York, to prepare plans and specifications

for the proposed building, and as an architect to superintend its construction. Mr. Palmer had been previously in negotiation with the defendant Robert I. Fleming, an architect and builder resident in the city of Washington, with a view to his employment as the architect of the contemplated building; but the negotiations apparently were without practical result. Very soon, however, after the employment of Mr. Thomas, Mr. Palmer, finding it expedient to have some person to represent his interests, as he claims, and to exercise immediate superintendence of the work of construction, which it was resolved to conduct by the system of day labor and partial contracts with the different materialmen, and not by one contract for the entirety, employed Mr. Fleming for that purpose. For his compensation as such superintendent it was agreed that Mr. Fleming should receive the specific sum of fifteen hundred dollars. The contract between Mr. Palmer and the architect Mr. Thomas was that, in consideration of the services to be rendered by the latter in the preparation of plans and specifications and for the architectural supervision which he was to render from time to time, he should receive a sum equal to five per centum of the cost of the building. It was assumed that the construction could be completed in eight months; it actually occupied eighteen months. And the cost of the building, which Mr. Palmer seems to have in his own mind in some way limited to $40,000, actually amounted to upwards of $85,000. This great enlargement of the cost beyond his expectations is the cause of all the subsequent difficulty between the parties; and a great part of the present controversy is devoted to the elucidation of the question whether there was an understanding or agreement between the parties violated by Thomas and Fleming, that the cost should not exceed $40,000.

During the course of construction, from August 11, 1884, to January 27, 1886, Mr. Palmer remitted to Mr. Fleming for disbursement in the work various sums, aggregating $42,943.70, which was the total amount received by him.

This amount he disbursed in the payment of labor and materials stated to have gone into the building, and in discharge of various contracts with material-men—all of which contracts, so far as they have been made by Fleming, had been submitted by him to Thomas, and through Thomas to the appellant Palmer. For several contracts, it seems, were made directly by Mr. Palmer himself for materials to be furnished to the building. None of these, however, were to be paid for with any of the money remitted to Mr. Fleming.

Detailed statements of his expenditures, with accompanying vouchers, seem to have been transmitted monthly, or at all events periodically, by Mr. Fleming to Mr. Palmer during the progress of the work. But the latter had become greatly dissatisfied with the cost which had been increased so largely beyond his expectations—the result, as he claimed, of mismanagement and extravagance on the part of his agents, but as they alleged, of extravagant alterations and additions to the original plan made by Palmer himself. He caused private investigation to be had and private measurements made of the work. But whether this investigation was satisfactory to him or not, he took no action upon it before September 25, 1888, when the bill of complaint in this cause was filed, a period of over two years and a half after Fleming's work had been done and his accounts had been rendered. It seems that the filing of the bill even then was due to the action taken by Mr. Thomas against Mr. Palmer.

Mr. Thomas, on account of his compensation, had received from Mr. Palmer various sums, amounting in the aggregate to $2,000. Upon his theory that the building was not to cost over $40,000, Mr. Palmer claimed that this was payment in full. Mr. Thomas, denying that there was any understanding whatever that the building should not cost more than $40,000, claimed to be entitled to five per centum upon the actual expenditures, which he placed at $75,000, a lower figure than it was in fact; and thereupon he brought suit in the common law side of the Supreme Court of the

District of Columbia for the sum of $1,750, the balance which he claimed to be due to him on that basis.

Thereupon Mr. Palmer filed his bill of complaint in the present cause, joining Fleming and Thomas as defendants, and charging them with fraud and collusion, and with combining in a conspiracy against him unduly for their own purposes to enhance the cost of the work; and the prayers of his bill was for an accounting from both defendants and an injunction against the suit at common law commenced by Thomas.

The defendants answered severally, but substantially to the same effect. Both denied in the most positive terms all fraud, collusion and conspiracy; and also the existence of any understanding or agreement limiting the cost of the building to $40,000. The defendant Fleming averred his readiness to submit to a full accounting, notwithstanding that he claimed that he had already rendered a full and complete account to the complainant. Thomas expressed his willingness to be bound by any accounting that should be had.

Upon his being called as a witness in his own behalf, the complainant frankly disavowed the charge of collusion, conspiracy and joint fraud; and rested his case against Fleming solely upon the correctness of the accounts presented by the latter, which he challenged. By agreement between counsel for the complainant and the defendant Fleming, a reference was then had to the auditor of the court to state an account between these two; and the auditor thereupon proceeded to take testimony and to state an account.

The auditor's report found Fleming's accounts to be substantially correct as he had submitted them; and out of the aggregate sum of $42,943.70 remitted to him by the complainant, found, after the allowance of the stipulated compensation of $1,500, a balance in his hands of $40.44, to be retained subject to a distinct claim of Fleming against the complainant for plans and specifications furnished to him. To this report twenty-one exceptions were taken, seven of

them of a merely formal character, and fourteen to specific items in the account.

In the meantime, pending the hearing before the auditor in the accounting between the complainant ,and Mr. Fleming, testimony continued to be taken before an examiner on the issues between the complainant and Mr. Thomas, which had been reduced to the two questions, whether Mr. Thomas had rendered the services which he had stipulated to render, and whether his compensation was to be fixed on a basis of a cost of $40,000, or on some higher sum, as $75,000.

The whole case finally came up for hearing before the special term of the Supreme Court of the District of Columbia, and that court, first adjudging in very emphatic terms that the charges of fraud against Fleming had not been sustained, proceeded to overrule all the exceptions to the auditor's report, ratified and confirmed that report, adjudged that Fleming had in his hands $42.64 of the money advanced to him by the complainant, and dismissed the bill, with costs, as to all the other charges against him. And it also dismissed the bill as to Thomas, leaving the suit at common law between him and the complainant to be prosecuted as the parties might think proper.

From this decree of the court in special term an appeal was taken to the General Term; and that appeal is now before us for determination.

*Mr. Walter D. Davidge, Mr. M. V. Montgomery* and *Messrs. Edwards & Barnard* for the appellant.

*Mr. R. Ross Perry* for the appellee Fleming.

*Mr. Calderon Carlisle* and *Mr. Wm. G. Johnson* for the appellee Thomas.

Mr. Justice MORRIS delivered the opinion of the Court:

1. The bill was properly dismissed as against the defendant Thomas. The charge of collusion and fraud in which it was sought to involve him with the defendant Fleming having utterly failed for want of proof, and having in fact

been withdrawn by the complainant, there was no ground whatever on which to hold him in this suit. By the failure of that charge it became apparent at once that he had been improperly joined in this suit. He was in no way connected with the accounting sought to be had from Fleming. He had disbursed none of the money, and was in no way responsible for the expenditures, except in so far as errors of judgment on his part, if any there were, or intention thereby to enhance the amount of his own compensation, might have contributed to swell the total amount. But neither one of these things, in the absence of collusion, would have made him liable with Fleming. The controversy between Thomas and the complainant amounts now to nothing more than a question of the compensation, if any, to be paid to the former for his services, with possibly a claim of some kind on the part of the complainant for unliquidated damages, if there was any failure on the part of the architect to perform the duties assumed by him. All this can properly be determined in the pending common law suit, or some suitable proceeding at common law. It does not present a case for the intervention of a court of equity.

It is greatly to be regretted that, after all the time and labor that has been expended in this case, and the mass of testimony that has been taken, the court, as a court of equity, notwithstanding the expressed desire of both parties for a final adjudication of their entire controversy in this suit, should feel itself constrained to decline to exercise jurisdiction. But consent cannot give jurisdiction, and the allegation of fraud and collusion in the bill, unsustained by proof, cannot give jurisdiction; and the maxim, invoked by the appellant, that when equity has acquired jurisdiction of a cause upon equitable grounds, it will proceed to administer complete relief, even though the relief should be such as would properly come from a court of common law, is not applicable to this case. A court of equity does not acquire jurisdiction by the allegation of an equitable ground of relief in a bill of complaint. If it did, it would be in the power

of any complainant to close permanently the doors of all the courts of common law. It would not require even as much as the consent of parties to give jurisdiction. Allegations and proof both are required for that purpose; and when the proof fails, the jurisdiction fails. It is only when a party shows himself entitled to some part at least of the equitable relief which he seeks that a court of equity will proceed to administer common law relief also. *Dowell* v. *Mitchell*, 105 U. S., 430; *Baily* v. *Taylor*, 1 Russ. & Mylne, 73; Story's Eq. Jur., Sec. 74, and cases cited in the notes.

We must conclude, therefore, that the court below was right in dismissing the bill as to Thomas, and leaving the parties to their suit at law. Nor do we feel that we could properly act as referee upon the offer of both parties to abide by the decree of this court.

2. In the accounting, which was properly ordered between the complainant and the defendant Fleming, the question of the alleged understanding which limited the cost of the house to $40,000, has no part, further than as the bills of Fleming may be found inaccurate or improper. The able and ingenious argument, therefore, that has been addressed to us on that point, however applicable it may be to the controversy between Mr. Palmer and Mr. Thomas, we must regard as entirely irrelevant to the issues between Mr. Palmer and Mr. Fleming. The compensation of the latter does not depend at all upon it—although it is true, we believe, that he made some indefinite claim for increased compensation on account of increased labor and trouble on his part. But this claim does not seem to have been seriously pressed; and the auditor has ignored it in his report. The only question in this case between Mr. Palmer and Mr. Fleming is the correctness of the accounts of the latter as presented to the auditor and reported to the court by that officer.

To these accounts, as we have stated, fifteen specific exceptions have been taken. The formal exceptions do not seem to be insisted on, and appear not to require serious

consideration from us. And of the fifteen specific exceptions, only six are greatly urged. These are in their order as follows:

1st. To a part of the bill of Mr. Shea for excavating and concreting the foundations; 2d. To a charge for purchase of bricks, alleged to be in excess of the amount actually laid; 3d. To a bill of one McLeod for stone work; 4th. To a bill of one Carver for carpentering and wood work; 5th. To a bill of Burdette & Williams for hardware; 6th. To a bill of Fleming himself designated as a "carpenters' and helpers' pay roll."

Of these, the third, fourth and fifth may be dismissed without much comment. With reference to the third (McLeod's bill for stone work), the claim of the complainant that the work alleged to have been done by McLeod, was or should have been included in the contract of Gill & Baird for stone work, is not supported by the testimony or justified by a comparison of the two bills, which shows clearly that the work was very different. The fourth exception is to a bill of F. N. Carver; but it is not at all apparent wherein that bill is inaccurate. It is proved that the work was done, and the money paid; and that Fleming had no interest in it. The exception which we have indicated as the fifth—to a bill of Burdette & Williams for hardware—has even less substantial foundation. It appears that Mr. Palmer himself settled this bill after a controversy over it between Mr. Fleming and the other parties which Mr. Palmer undertook to adjust for himself.

Objection is made to the allowance of part of Shea's bill for excavation and concreting. From the proof on the subject the fact seems to be that, on account of some error in the plans and specifications, the excavation for the foundations was dug too deep in the first instance, and had to be filled up again to some extent. But it is not apparent why Fleming should be held responsible for this. The mistake was not his mistake, but that of the architect; and if the complainant has any just claim at all in this regard it is

against the latter. It was rather commendable than otherwise on the part of Fleming not to have delayed the work on account of this mistake.

In the purchase of bricks from the Washington Brick Company by the defendant Fleming, certain "commissions," amounting to $148.76, were allowed by the company and deducted to Fleming from the total amount of the bill. These "commissions" Fleming explains as being a rebate for the payment of cash; and his counsel supposed that they had been allowed to the complainant in the account. In this, however, it is admitted that he was mistaken; and it is now conceded that the complainant should receive credit for this amount over and above what is allowed in the auditor's report.

The number of bricks purchased by Fleming from the brick company, counsel for the complainant calculated in their brief as amounting to 557,908, while from the bill of Jones for laying brick it appears that only 492,508 were laid, a discrepancy of 65,000, with which Fleming ought to be charged. But the aggregate number of bricks in the bill of the brick company is 494,308, and not 557,908; and the discrepancy is only to the extent of 1,400, which may easily be accounted for in one way or another.

There remains the "carpenters and helpers' pay roll," Fleming's own bill for men and labor furnished by him to the work of construction. In this, two items principally are found objectionable, the designation of some draughtsmen on the pay roll as carpenters, and a charge for apprentices and others greater than Fleming himself was accustomed to pay them by the day. But it appears that the draughtsmen performed the work with which they are credited, that the prices paid to them were fair, and that the complainant himself knew of the employment while the work was in progress, and acknowledged its propriety. And it appears also, that the apprentices were employed by Fleming permanently, and were paid whether they were sick or well, and that Fleming took the risk of their employment, as their

services might be demanded. It does not appear, therefore, that there is anything unreasonable in the charge which he makes for them.

The decree of the court below must be modified so far as to allow to the complainant the sum of $148.76 in addition to the amount found by the auditor to be due to him from the defendant Fleming, making in all the sum of $191.40, which the complainant is entitled to recover from said defendant. In other respects, the said decree must be affirmed.

Two-thirds of the costs of this appeal are to be paid by the appellant and one-third by the defendant Fleming, inasmuch as the defendant Thomas has been dismissed from the cause.

*Decree modified and affirmed.*